UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM B. PEOPLES, JR., | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:13-cv-2003-JMS-MJD |
| CAROLYN COLVIN, *as Acting Commissioner of Social Security*, | ) |
| | ) |
| *Defendant*. | ) |

### ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff William B. Peoples, Jr., applied for disability insurance benefits from the Social Security Administration ("SSA") on June 6, 2011, alleging a disability onset date of May 20, 2011. [Filing No. 11-6 at 2.] His application was denied initially and on rehearing, and a hearing was then held before Administrative Law Judge David Begley (the "ALJ") on September 5, 2012. [Filing No. 11-2 at 16.] On September 26, 2012, the ALJ issued an opinion concluding that Mr. Peoples was not entitled to disability benefits. [Filing No. 11-3 at 7-17.] The Appeals Council denied review on October 24, 2013, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. [Filing No. 11-2 at 2-4.] Mr. Peoples filed this civil action pursuant to 42 U.S.C. § 405(g), asking the Court to review his denial of benefits. [Filing No. 1.]

**I.**
**BACKGROUND**

Mr. Peoples was almost forty-nine years old when he applied for disability benefits, alleging an onset date of May 20, 2011. [Filing No. 11-6 at 2.] Mr. Peoples last worked in 1996. [Filing No. 11-2 at 22.] The ALJ found Mr. Peoples to have the following severe impairments: diabetes mellitus, obesity, hypertension, chronic obstructive pulmonary disease ("COPD"),

1

chronic kidney disease, cardiomyopathy, obstructive sleep apnea, and retinopathy.[1] [Filing No. 11-3 at 9.]

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on September 26, 2012, concluding that Mr. Peoples is not disabled. [Filing No. 11-3 at 17.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Peoples had not engaged in substantial gainful activity[2] since his application date. [Filing No. 11-3 at 9.]

- At Step Two of the analysis, the ALJ found that Mr. Peoples suffered from the following severe impairments: diabetes mellitus; obesity; hypertension; COPD; chronic kidney disease; cardiomyopathy; obstructive sleep apnea; and retinopathy. [Filing No. 11-3 at 9.]

- At Step Three of the analysis, the ALJ found that Mr. Peoples did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 11-3 at 9.]

- The ALJ concluded that Mr. Peoples had the residual functional capacity ("RFC") to perform light work, except that he could occasionally climb ramps and stairs, climb ladders, ropes or scaffolds, balance, stoop, kneel, crouch and crawl; must avoid concentrated exposure to extreme heat, cold, humidity, irritants such as fumes, odors,

---

[1] Mr. Peoples detailed pertinent facts in his opening brief, and the Commissioner did not dispute those facts. [Filing No. 13 at 2-8; Filing No. 18 at 2.] Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Peoples, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

2

dust, gases, and poor ventilation; and is limited to jobs that do not require far acuity. [Filing No. 11-3 at 10.]

- At Step Four of the analysis, the ALJ concluded that Mr. Peoples had no past relevant work. [Filing No. 11-3 at 16.]

- At Step Five of the analysis, the ALJ concluded that considering Mr. Peoples' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform, such as cleaner, fast food worker, and assembler. [Filing No. 11-3 at 16-17.]

- Based on these findings, the ALJ concluded that Mr. Peoples was not disabled. [Filing No. 11-3 at 17.]

Mr. Peoples requested that the Appeals Council review the ALJ's decision, but it denied that request on October 24, 2013. [Filing No. 11-2 at 2.] That decision is the final decision of the Commissioner for purposes of judicial review, and Mr. Peoples seeks relief from this Court. [Filing No. 1.]

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

3

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

# III.
## DISCUSSION

Mr. Peoples raises four issues on appeal. First, Mr. Peoples argues that substantial evidence fails to support the ALJ's decision. [Filing No. 13 at 8-10.] Second, Mr. Peoples contends that the ALJ erred by failing to summon a medical advisor to testify whether his combined impairments met a listed impairment. [Filing No. 13 at 11-13.] Third, Mr. Peoples challenges the ALJ's adverse credibility finding. [Filing No. 13 at 14-18.] Fourth, Mr. Peoples summarily contends that the ALJ's decision must be reversed because "the ALJ's residual functional capacity assessment did not accurately describe the claimant's impairments." [Filing No. 13 at 18.]

### A. Substantial Evidence

Mr. Peoples argues that substantial evidence fails to support the ALJ's decision. [Filing No. 13 at 8-10.] Specifically, he contends that the ALJ erred by analyzing Mr. Peoples' impairments independently, instead of in combination.[3] [Filing No. 13 at 9.]

In response, the Commissioner argues that the ALJ reasonably assessed Mr. Peoples' multiple impairments. [Filing No. 18 at 4-7.] She points to various places in the decision where the ALJ explained that Mr. Peoples' impairments were considered both individually and in combination. [Filing No. 18 at 4-5.] The Commissioner also emphasizes that simply having a diagnosis or multiple diagnoses does not necessarily lead to a disability finding; instead, it is the functional limitations of those diagnoses that must be considered. [Filing No. 18 at 6.]

---

[3] Mr. Peoples also raises an argument regarding the ALJ's reliance on his noncompliance with prescribed medications, [Filing No. 13 at 9-10], but the Court finds it more appropriate to address that argument in the context of his challenge to the ALJ's adverse credibility determination in Part III.C.1.

In reply, Mr. Peoples again emphasizes that his impairments were to be considered in conjunction with each other and contends that the ALJ failed to do this. [Filing No. 19 at 4-6.]

Mr. Peoples is correct that in determining whether his impairments are of a sufficient medical severity to be disabling, the ALJ "shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. §§ 423(d)(2)(B); *see also Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (an ALJ must consider the cumulative effect of the claimant's impairments). The Court disagrees with Mr. Peoples' assertion, however, that the ALJ in his case did not do this.

Mr. Peoples lists various impairments with which he was diagnosed and contends that the ALJ erred by considering these conditions individually, instead of in conjunction with each other. [Filing No. 13 at 8-9; Filing No. 19 at 4-5.] But as the Commissioner points out, the mere "diagnosis of an impairment does not establish the severity of the impairment." *Flint v. Astrue*, 2013 WL 30104, *5 (S.D. Ind. 2013) (citing *Estok v. Apfel*, 152 F.3d 636, 639-40 (7th Cir. 1998)); *see Stanley v. Astrue*, 2012 WL 1158630, *8 n.8 (N.D. Ind. 2012) ("[T]he diagnosis of an impairment does not alone establish its severity and its resulting limitations."). Instead, the functional limitations of the impairments are key in assessing disability. *See* 20 C.F.R. § 404.1545 (noting that the RFC accounts for "physical and mental *limitations*" from the impairments) (emphasis added). Mr. Peoples also lists several purported functional limitations he contends that he has from those diagnoses, but he does not cite any evidence supporting those assertions. [*See* Filing No. 13 at 8 (citing no evidence); Filing No. 19 at 4 (citing no evidence).] Failure to specifically cite to evidence in the record waives the issue. *See, e.g.*, *Powell v. Colvin*, 2014 WL 69775, at *5 (S.D. Ind. 2014) (finding waiver when claimant "makes no attempt to cite to the record").

6

Waiver notwithstanding, the Commissioner points to several places in the ALJ's decision where the ALJ noted that he had "considered all symptoms" both individually and in conjunction with each other and had given "careful consideration of the entire record." [Filing No. 18 at 4 (citing Filing No. 11-3 at 9-11).] Mr. Peoples provides no reason for the Court to second-guess the ALJ's representations that he did, in fact, consider the effects of Mr. Peoples' impairments in combination. *See Richison v. Astrue*, 462 F. App'x 622, 626 (7th Cir. 2012) (concluding that an ALJ who "wrote that he gave 'careful consideration' to 'the entire record' and 'considered all symptoms'" adequately considered the cumulative effects of the claimant's impairments in the absence of contrary evidence). Accordingly, Mr. Peoples has not shown error on this basis.

**B. Failure to Summon a Medical Advisor**

Mr. Peoples argues that the ALJ erred by failing to summon a medical advisor to testify whether his combined impairments were medically equivalent to any listed impairment, such as Listing 4.02 (chronic heart failure). [Filing No. 13 at 11-13.] Mr. Peoples contends that the ALJ could not reasonably rely on state agency physician opinions given in August 2011 and October 2011 because Mr. Peoples was subsequently hospitalized in November 2011 because of chest pain. [Filing No. 13 at 11.] Mr. Peoples urges this Court to reverse the ALJ's decision because "the ALJ's medical equivalence determination is based only on the ALJ's layperson's opinion or upon the non-examining, non-treating opinion based on less than all of the evidence." [Filing No. 13 at 13.]

In response, the Commissioner points out that the ALJ relied on the opinion of state agency reviewing consultant Dr. Fernando Montoya, who concluded that Mr. Peoples could perform a limited range of light work. [Filing No. 18 at 7.] While Mr. Peoples was hospitalized for chest pain after that opinion, the Commissioner contends that the ALJ adequately addressed that

evidence and that Mr. Peoples does not explain how that evidence would have presumably changed the doctor's opinion. [Filing No. 18 at 8-9.]

In reply, Mr. Peoples emphasizes that the issue of medical equivalence must be based on a medical opinion, which neither he nor the ALJ are capable of making. [Filing No. 19 at 7-8.] Thus, he contends that he cannot explain how the evidence of hospitalization post-dating the doctors' opinions would have affected those opinions. [Filing No. 19 at 7-8.]

"Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett*, 381 F.3d at 670. An ALJ's reliance on disability forms filled out by state agency physicians "satisf[ies] the ALJ's duty to consider an expert's opinion on medical equivalence." *Id.* at 671; *see Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (holding that the disability forms filled out by the state agency physicians "conclusively establish that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review") (citation and quotation marks omitted); *see also* S.S.R. 96-6p at *3.

As an initial matter, the Court notes that Mr. Peoples does not detail the requirements of Listing 4.02 or explain how evidence of the November 2011 hospitalization for chest pain would support a finding of medical equivalence with that listing. Instead, Mr. Peoples' position appears to be that because that hospitalization post-dated the State agency physician's medical opinion, the ALJ was required to call a medical expert on equivalence. Mr. Peoples cites no authority for such a broad proposition.

While there could be cases where subsequent material evidence casts doubt on an earlier medical opinion, this is not one of them. Here, the ALJ specifically addressed Mr. Peoples' November 2011 hospitalization for chest pain, specifically noting that "[i]t would later be revealed

that the claimant had again been without medications, leading to his episode of [cardiac] urgency; once he resumed taking his medications, his symptoms improved dramatically, and by November 18, 2011, at a follow-up, he was showing no signs of hypertensive symptoms." [Filing No. 11-3 at 12.] Mr. Peoples does not deny that he was not taking his medication when he was hospitalized in November 2011 or that his symptoms improved dramatically after he resumed his medications. Mr. Peoples completely ignores the ALJ's analysis on this point and contends, without citation to authority, that simply because the hospitalization post-dates the medical opinion at issue, the ALJ should have called a medical advisor regarding equivalence. The Court rejects this argument. *See Kendrick v. Shalala*, 998 F.2d 455, 456-57 (7th Cir. 1993) ("The difficulty is that no record is 'complete'—one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on. Taking 'complete record' literally would be a formula for paralysis, undermining all of the objectives of simplified procedure."). To the extent that Mr. Peoples challenges the ALJ's consideration of his failure to take the medication, the Court will address that argument in its analysis of the adverse credibility finding.

### C. Adverse Credibility Finding

The ALJ made an adverse finding regarding Mr. Peoples' credibility. [Filing No. 11-3 at 11-14.] Mr. Peoples contends that the ALJ's reliance on his failure to obtain medical care and take medications was erroneous because the ALJ did not make an effort to determine the reasons for Mr. Peoples' non-compliance. [Filing No. 13 at 9-10.] Mr. Peoples also makes a general challenge to boilerplate credibility language that the Seventh Circuit Court of Appeals has criticized. [Filing No. 13 at 14-17.] The Court will address these issues separately.

*1) Noncompliance with Prescribed Medication*

Mr. Peoples contends that the ALJ's decision repeatedly cites his noncompliance with treatment recommendations and medication prescriptions. [Filing No. 13 at 9-10.] Mr. Peoples argues that the ALJ "made no effort to determine why [Mr. Peoples] was having these problems," which he contends violates Social Security Ruling 96-7p. [Filing No. 13 at 9-10.] In his reply, Mr. Peoples specifically alleges that he "had no money to obtain medical treatment," which he claims the ALJ ignored. [Filing No. 19 at 4-5.]

In response, the Commissioner contends that it is appropriate to consider Mr. Peoples' noncompliance in determining his credibility. [Filing No. 18 at 13-15.] She emphasizes that Mr. Peoples "offers no reason or excuse as to why he was non-compliant" and "cites no evidence showing that his non-compliance was somehow excused or should not have been considered by the ALJ." [Filing No. 18 at 13.]

The ALJ's credibility determination is typically entitled to special deference. *Scheck*, 357 F.3d at 703; *see Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying"). Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, "the resolution of competing arguments based on the record is for the ALJ, not the court." *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). In "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

Failure to adhere to treatment prescribed by physicians is relevant to the credibility analysis. *Castile v. Astrue*, 617 F.3d 923, 930 (7th Cir. 2010) (affirming adverse credibility finding and noting that "[t]he ALJ also found it particularly instructive that [the claimant] either refused or utterly failed to adhere to the treatment programs prescribed by her physicians."). That said, "[a]n ALJ must not draw a negative inference about a claimant's condition from a failure to pursue treatment unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Griggs v. Astrue*, 2013 WL 1976078, at *8 (N.D. Ind. 2013) (citing SSR 96-7p). A claimant must point to reasons in the record for her noncompliance that the ALJ failed to consider. *Id.*; *L.B.M. ex rel. Motley v. Astrue*, 2010 WL 1190326, at *19 (S.D. Ind. 2010).

The ALJ thoroughly detailed Mr. Peoples' noncompliance with his medications in his opinion. [Filing No. 11-3 at 12-13; Filing No. 11-3 at 14.] The ALJ concluded that Mr. Peoples had a poor history of taking his cardiac and diabetes medication, persisting to the year of the hearing. [Filing No. 11-3 at 12-13; Filing No. 11-3 at 14.] The ALJ concluded that although the evidence reflects that Mr. Peoples has "had several exacerbations of high blood pressure and hypertensive urgency, his symptoms have been shown to largely be in response to non-compliance with treatment, specifically failing to take his anti-hypertension medications." [Filing No. 11-3 at 15.]

Mr. Peoples does not deny his noncompliance with the prescribed medications. He offers no explanation for the noncompliance in his opening brief. [Filing No. 13 at 9-10.] On reply, he makes a cursory reference to an allegation that "he had no money to obtain medical treatment." [Filing No. 19 at 5.] Arguments raised for the first time in reply are typically waived. *Carter v. Astrue*, 413 F. App'x 899, 906 (7th Cir. 2011).

11

Even if the Court considers Mr. Peoples' explanation that his alleged lack of funds resulted in his noncompliance with prescribed treatment, Mr. Peoples still has not shown that the ALJ committed reversible error. SSR 82-59 provides that an individual's inability to pay for prescribed treatment will not be held against him, but that "free community resources" must be "unavailable." The regulation further provides that "[a]ll possible resources (e.g., clinics, charitable and public assistance agencies, etc.), must be explored. Contacts with such resources and the claimant's financial circumstances must be documented." SSR 82-59. "An absence of evidence that a claimant sought low-cost or free care may warrant discrediting his excuse that he could not afford treatment." *Buchholtz v. Barnhart*, 98 F. App'x 540, 546 (7th Cir. 2004).

Mr. Peoples does not cite any evidence that he sought low-cost or free care, and he does not argue that it was unavailable in his local community, such that his lack of treatment could not be held against him pursuant to SSR 82-59. He cites no other reasons for his noncompliance that the ALJ should have considered. Accordingly, the Court concludes that the ALJ did not commit error by relying on Mr. Peoples' noncompliance as part of the adverse credibility analysis.

### 2) *Boilerplate Language*

Mr. Peoples contends that the ALJ's decision must be reversed because it contains boilerplate language that has been criticized by the Seventh Circuit Court of Appeals. [Filing No. 13 at 14-17.] He claims that this language was "the entirety" of the ALJ's adverse credibility determination, which requires reversal because of the ALJ's "refusal to disclose his reasoning." [Filing No. 13 at 15-17.]

In response, the Commissioner argues that the ALJ reasonably determined that Mr. Peoples' complaints of pain and other symptoms were not entirely credible. [Filing No. 18 at 10-15.] The Commissioner agrees that remand would be appropriate if the boilerplate language to

which Mr. Peoples points had been the only analysis, but she emphasizes that the ALJ in this case provided sufficient reasons for his finding. [Filing No. 18 at 11-12.]

The Court is aware of a trend where Mr. Peoples' counsel argues that an ALJ's credibility analysis is flawed because he or she has used "boilerplate language" and has determined the claimant's RFC before discussing credibility. [*See, e.g.*, *Broadus v. Colvin*, 1:13-cv-1543-JMS-DKL, at Filing No. 21 at 19-22; *Jordan v. Colvin*, 1:13-cv-01817-JMS-DKL at Filing No. 12 at 20-23.] In cases with ALJ opinions containing the boilerplate language, counsel provides the same argument and concludes that "[t]he ALJ's refusal to disclose her reasoning requires reversal." [Filing No. 12 at 23.] The boilerplate language at issue from the ALJ's opinion reads:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

[Filing No. 11-3 at 11.]

It is correct that this language is the credibility boilerplate language that has been criticized by the Seventh Circuit. *See Bjornson*, 671 F.3d at 644-45. This boilerplate language is disfavored because, among other reasons, it "puts the cart before the horse, in the sense that the determination of [RFC] must be based on the evidence…rather than forcing the [claimant's] testimony into a foregone conclusion." *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). But the use of this boilerplate language does not always necessitate reversal of the ALJ's decision. *Id.* "If the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless." *Id.*; *see Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013) ("[T]he simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination.").

The Court is concerned that Mr. Peoples' counsel seems to be including this "boilerplate" argument in briefs without actually analyzing the ALJ's credibility analysis in the individual case. [*See, e.g.*, *Broadus*, 1:13-cv-1543-JMS-DKL, at Filing No. 21 at 19-22; *Jordan*, 1:13-cv-01817-JMS-DKL at Filing No. 12 at 20-23.] In this case, the ALJ provided a sufficient explanation of why he did not find Mr. Peoples' representations regarding the severity of his symptoms to be credible, including numerous citations to the record. For example, the ALJ discussed:

- The extensive evidence of Mr. Peoples' noncompliance with medications. [Filing No. 11-3 at 12-13.]

- Mr. Peoples' representation that he was frequently checking his glucose levels, despite the examination of his home glucose meter that revealed only one reading. [Filing No. 11-3 at 13.]

- Mr. Peoples' "conflicting testimony" regarding his use of illegal drugs. [Filing No. 11-3 at 15.] Specifically, although Mr. Peoples tested positive for marijuana on a urine drug screen in 2011, [Filing No. 11-8 at 49], he initially denied using any illegal drugs in the five years preceding his hearing, [Filing No. 11-2 at 37].

- Mr. Peoples' ability to live independently on the second floor of a building and engage in some household chores and other activities of daily living. [Filing No. 11-3 at 15.]

Although the ALJ's use of the boilerplate credibility language is inappropriate, its inclusion in this case was harmless because the ALJ sufficiently explained how he reached his credibility determination. *Filus*, 694 F.3d at 868. Mr. Peoples' assertion that the ALJ failed to "cite any evidence in support of his conclusory statements" is plainly wrong, [Filing No. 13 at 16], and

indicates that Mr. Peoples' counsel did not carefully review the ALJ's opinion.[4] In short, reversal is not warranted simply because the ALJ included boilerplate language in his credibility discussion. The ALJ adequately discussed his reasoning for making an adverse credibility determination, and Mr. Peoples' assertion otherwise completely ignores the ALJ's rationale.

**D. RFC Determination**

Mr. Peoples presents a conclusory final argument that "[r]emand is required where an ALJ fails to give full consideration to all of a claimant's documented impairments in determining that he is not disabled." [Filing No. 13 at 18.] He contends that the ALJ's RFC assessment "did not accurately describe the claimant's impairments" and that the ALJ "failed to account for the combined disabling result of his multiple quite severe impairments." [Filing No. 13 at 18.] Thus, Mr. Peoples concludes that the ALJ's "limitation of the work did not address the impact of all of the claimant's limitations." [Filing No. 13 at 18.]

The Commissioner responds that Mr. Peoples' argument is merely a "reiteration of his arguments addressed above." [Filing No. 18 at 15.]

The Court rejects Mr. Peoples' argument, to the extent it differs from the arguments already addressed above, because Mr. Peoples does not specify which documented impairments were allegedly not given full consideration, which impairments were allegedly not accurately described, or how the RFC did not address the impact of all of Mr. Peoples' limitations. Instead, Mr. Peoples cites principles of law without applying them to the facts of his case. As it has done before, the Court finds this undeveloped argument to be waived. *Woytsek v. Colvin*, 2013 WL 4479034, at

---

[4] The Court finds it prudent to again remind Mr. Peoples' counsel that his filings on behalf of claimants are subject to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927. The inclusion of boilerplate arguments that are borderline frivolous when considered in light of the individual case are a waste of judicial resources as well as of opposing counsel's time.

15

*8 (S.D. Ind. 2013) (citing *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988) ("an issue expressly presented for resolution is waived if not developed by argument")).

## IV.
### CONCLUSION

The standard for disability claims under the Social Security Act is stringent. "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 364 Fed. App'x 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id.* Taken together, the Court can find no legal basis presented by Mr. Peoples to overturn the Commissioner's decision. Therefore, the decision below is **AFFIRMED**. Final judgment will be entered accordingly.

October 31, 2014

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF:**

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov